# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT KROUPA, individually and derivatively on behalf of GARBUS KROUPA ENTERTAINMENT, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 02691 |
| v. | ) ) | Judge Castillo |
| JAMES D. GARBUS, | ) ) | Magistrate Judge Valdez |
| Defendant. | ) | |

## MOTION TO REMAND

Plaintiff Robert Kroupa ("Kroupa"), individually and derivatively on behalf of Garbus Kroupa Entertainment, LLC ("GKE"), by his attorneys, Novack and Macey LLP, pursuant to 28 U.S.C. Section 1447(c), hereby moves this Court for entry of an order remanding this action to the Circuit Court of Cook County, Illinois, County Department, Chancery Division, because there is not complete diversity of citizenship between the parties and, therefore, this Court lacks subject matter jurisdiction. In support hereof, Kroupa states as follows:

## SUMMARY

1.     Diversity jurisdiction is plainly lacking. In the Complaint, Kroupa brings claims against Defendant James D. Garbus ("Garbus") not only (a) in Kroupa's individual capacity, but also (b) derivatively, for Garbus Kroupa Entertainment, LLC ("GKE"). While Kroupa and Garbus are citizens of different states -- Illinois and New York, respectively -- the citizenship of GKE also must be considered. See, e.g., Ross v. Bernhard, 396 U.S. 531, 539 (1970) (in derivative suit, entity is indispensable party).

2.      GKE is a Delaware limited liability company ("LLC"). But, for diversity purposes, GKE is a citizen of <u>both Illinois and New York</u>. Thus, regardless of whether GKE is considered a plaintiff or a defendant, its presence precludes diversity. Accordingly, this action must be remanded to Illinois State Court. Moreover, Plaintiff should be awarded the attorney's fees incurred in responding to a patently invalid removal.

## FACTS

3.      Kroupa is an individual who is a citizen of Illinois. (<u>See</u> Notice of Removal to Federal Court ¶4 ("Notice of Removal") attached as Exhibit 1; Compl. ¶2, attached to the Notice of Removal as Exhibit A.) Kroupa is one of the two managers and one of the two members of GKE. (Compl. ¶2.)

4.      Garbus is an individual who is a citizen of New York. (<u>See</u> Notice of Removal ¶5.) Garbus is the other manager and member of GKE. (Compl. ¶4.)

5.      Kroupa filed his individual and derivative Complaint for Reformation, Declaratory and Other Relief (the "Complaint") in the Circuit Court of Cook County Illinois, County Department, Chancery Division on April 8, 2008.

6.      In the Complaint, Kroupa, individually, seeks reformation of the written GKE LLC agreement and, in the alternative, certain declaratory relief. In addition, individually and/or derivatively on GKE's behalf, Kroupa seeks remedies for Garbus' multiple breaches of his contractual and fiduciary duties.

7.      GKE was served with the Complaint and summons on or around April 9, 2008. (Affidavit of Service of Summons, attached as Exhibit 2.)

8.      Garbus was served with summons and the Complaint later than April 10, 2008. (Notice of Removal ¶2).

2

9.      Garbus filed the Notice of Removal on May 8, 2008. The Notice of Removal asserts that this Court has original diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(1). (See Notice of Removal ¶7.)

10.     On May 13, 2008, this Court sua sponte dismissed the complaint without prejudice to the filing of a timely motion to remand or a proper amended federal complaint.[1]

11.     A proper federal complaint, however, cannot be filed because, as shown below, there is not complete diversity of citizenship between the parties.

## ARGUMENT

12.     Questions on removal are to be strictly construed against federal jurisdiction:

> The district court must jealously guard its jurisdiction against abuse by parties who may not comprehend the constitutional importance of federal jurisdiction. Questions on removal are accordingly strictly construed against federal jurisdiction. And ambiguities are resolved against removal when doubt exists as to jurisdiction.

Stemmons v. Toyota Tsusho Am., Inc., 802 F.Supp. 195, 197 (N.D. Ill. 1992) (citations omitted); see also In re Shell Oil Co., 966 F.2d 1130, 1133 (7th Cir. 1992) (28 U.S.C. Section 1447(c) requires district courts to "remain vigilant to ensure the presence of jurisdiction even though the parties may disregard the subject").

13.     Consistent with these principles, "[t]he burden of proof on a motion to remand falls on the party seeking to preserve the right of removal, not the party moving for remand." Powell v. Zoning Bd. of Appeal of City of Chicago, Ill., No. 94 C 1113, 1994 WL 130766, at *1 (N.D. Ill. April 14, 1994) (citing, inter alia, Jones v. Gen. Tire & Rubber Co., 541 F.2d 660, 664 (7th Cir. 1976)).

14.     This case should be remanded because this Court lacks subject matter jurisdiction.

---

[1]      A mediation between the parties is presently scheduled to be held on June 18, 2008.

The parties are not diverse.  Garbus cannot establish otherwise.

**A.  GKE Is A Citizen Of Both New York And Illinois**

15.    While Kroupa and Garbus are citizens of different states, the citizenship of the derivative party -- GKE -- also must be considered.  In a derivative suit, the entity is an indispensable party.  E.g., Ross, 396 U.S. at 539.

16.    Because GKE is an LLC, for diversity purposes its citizenship is determined by looking at the citizenship of each of its members.  See Belleville Catering Co. v. Champaign Market Place, L.L.C., 350 F.3d 691, 692 (7th Cir. 2003).  "In common with other courts of appeals, we have held that limited liability companies are citizens of every state of which any member is a citizen." Id.

17.    GKE has two members, Kroupa and Garbus, who are citizens of Illinois and New York, respectively.  (See Compl. ¶2; Notice of Removal ¶¶4, 5.)

18.    As a result, GKE is a citizen, for diversity purposes, of both Illinois and New York. See Belleville, 350 F.3d at 692.

**B.  There Is No Diversity Regardless Of Whether GKE Is A Plaintiff Or Defendant**

19.    In a derivative suit, the entity may be aligned as either plaintiff or defendant.  Here, however, GKE's alignment makes no difference for purposes of diversity.  That is because -- regardless of whether GKE is a plaintiff or a defendant -- there is no diversity.

20.    If GKE is a plaintiff, then a New York citizen is on both sides of the case (GKE versus Garbus).  If GKE is a defendant, then an Illinois citizen is on both sides of the case (Kroupa versus GKE).  No matter what, diversity is absent.  Therefore, this action must be remanded to the Circuit Court of Cook County, Illinois, County Department, Chancery Division.

4

**C.**    **Plaintiff Should Be Awarded Attorneys' Fees And Costs**

21.    Pursuant to 28 U.S.C. §1447(c), the Court may award Kroupa his costs, including attorneys' fees, incurred as a result of Garbus' improper removal.

22.    Here, an award of attorneys' fees is warranted because, among other things, the Notice of Removal simply ignored GKE, the party that precludes diversity. In fact, the Notice of Removal failed to allege the "citizenship" of any of the parties, instead alleging only the "residence" of each individual party.

23.    Given that GKE's presence patently barred federal court jurisdiction, and the obvious defects in the Notice of Removal, the Court should award Kroupa his attorneys' fees and costs incurred in responding to Garbus' improper removal of this action.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, Kroupa, individually and derivatively on behalf of GKE, respectfully requests that: (A) this action be remanded to the Circuit Court of Cook County, Illinois, County Department, Chancery Division; (B) Kroupa be awarded the attorneys' fees and costs he incurred as a result of Garbus' improper removal; and (C) Kroupa be granted such other and further relief as is appropriate.

Respectfully submitted,

ROBERT KROUPA, individually and derivatively on behalf of GARBUS KROUPA ENTERTAINMENT, LLC

By: /s/ Stephen J. Siegel
        One Of His Attorneys

5

Stephen Novack
Stephen J. Siegel
Molly S. DiRago
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL  60606
(312) 419-6900
#218478

## <u>CERTIFICATE OF SERVICE</u>

Stephen J. Siegel, an attorney, affirms that he caused copies of the foregoing Motion to Remand to be served by electronically filing the document with the Clerk of Court using the ECF system.

Frederick R. Ball
Rachel G. Pontikes
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60603

this 23rd day of May, 2008.

/s/ <u>Stephen J. Siegel</u>
Stephen J. Siegel

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT KROUPA, individually and )
derivatively on behalf of GARBUS KROUPA )
ENTERTAINMENT, LLC )
)
                Plaintiff, )
)
    v. )
)
JAMES D. GARBUS, )
)
                Defendant. )

FILED COPY: MAY 8, 2008
08CV2691    EDA
JUDGE CASTILLO
MAGISTRATE JUDGE VALDEZ

No. _____

## NOTICE OF REMOVAL TO FEDERAL COURT

Defendant James Garbus ("Defendant") hereby files this Notice of Removal of this action

from the Circuit Court of Cook County, pursuant to 28 U.S.C. § 1441. In support of its Notice of

Removal, Defendant states as follows:

1.      In or around March 2008, plaintiff Robert Kroupa ("Plaintiff") filed the above-

captioned action against Defendant in the Circuit Court of Cook County, No. 08-CH-13020, by

filing a Summons and Complaint.

2.      On or after April 10, 2008, Defendant first received copies of the aforementioned

Summons and Complaint. A true and correct copy of the Complaint is attached as **Exhibit A**.

3.      The Summons and Complaint constitute all process, pleadings and orders served

upon Defendant in this action.

4.      Plaintiff is an individual who resides in Chicago, Illinois.

5.      Defendant is an individual who resides in New York, New York.

6.      Plaintiff has raised claims for reformation, breach of contract, breach of fiduciary

duty, removal of manager, inspection of documents and an accounting in connection with the

DM1\1330485.1

LLC agreement forming Garbus Kroupa Entertainment LLC. Plaintiff has alleged damages in excess of $10 million, plus interest, costs, and attorneys' fees.

7.     This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship exists between the parties and the amount in controversy pled in the Complaint exceeds the sum or value of $75,000, exclusive of interest and costs.

JAMES D. GARBUS


By:   s/Rachael G. Pontikes
        One of His Attorneys


Frederick R. Ball (ARDC #06236660)
Rachael G. Pontikes (ARDC#06275709)
Duane Morris LLP
190 South LaSalle Street
Suite 3700
Chicago, IL  60603
(312) 499-6700
(312) 499-6701 (fax)

2

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 8, 2008 she served a copy of the foregoing **Notice of Removal to Federal Court** by U.S. Mail upon:

Steve Siegel
Novack and Macey LLP
100 North Riverside Plaza
Chicago, IL   60606-1501

s/Rachael G. Pontikes
Rachael G Pontikes

3

DM1\1330485.1

JUDGE CASTILLO
MAGISTRATE JUDGE VALDEZ

# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

ROBERT KROUPA, individually and )
derivatively on behalf of GARBUS KROUPA )
ENTERTAINMENT, LLC, )
                                     )
            Plaintiff, )
                                     )     Case No. _____
      v. )
                                     )
JAMES D. GARBUS, )
                                     )
            Defendant. )

## COMPLAINT FOR REFORMATION, DECLARATORY AND OTHER RELIEF

Plaintiff Robert Kroupa ("Kroupa"), in his individual capacity and derivatively on behalf

of Garbus Kroupa Entertainment, LLC ("GKE"), by his attorneys, Novack and Macey LLP,

states as follows for his complaint against Defendant James D. Garbus ("Garbus"):

## NATURE OF THE CASE

1.      In late 2005, Plaintiff Kroupa and Defendant Garbus formed GKE, a Delaware

limited liability company ("LLC"). Kroupa brings this action both in his individual capacity and

derivatively on behalf of GKE. Individually, Kroupa seeks reformation of the written GKE LLC

agreement to conform it to the terms that he and Garbus actually agreed upon; in the alternative

to reformation, Kroupa seeks certain declaratory relief. In addition, individually and/or

derivatively on GKE's behalf, Kroupa seeks remedies for Garbus' multiple, flagrant breaches of

his contractual and fiduciary duties. Those remedies include money damages, inspection of

GKE records, an accounting and a judicial order removing Garbus as a manager of GKE.

## PARTIES

2.    Kroupa is an individual who resides in Chicago, Illinois. He is one of the two managers, and one of the two members, of GKE.

3.    GKE is a Delaware limited liability company with its principal office in New York, New York.

4.    Garbus is an individual who resides outside of the State of Illinois. He is the other manager and member of GKE.

## PERSONAL JURISDICTION

5.    This Court has personal jurisdiction over Garbus under subsections 2-209(a)(1), 2-209(a)(7) and/or 2-209(c) of Illinois' long-arm statute. 735 ILCS 5/2-209. Among other things, Garbus availed himself of the laws of Illinois in connection with GKE by: (a) soliciting and negotiating the subject contract via written and oral communications to Kroupa in Illinois; (b) transacting GKE business while Garbus was physically present in Illinois; and (c) sending written and oral communications relating to GKE, and to the performance of the subject contract, to Kroupa in Illinois. Additionally, the subject contract contains an Illinois choice of law provision.

## VENUE

6.    Venue is proper in this Court pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-101, in that the cause of action alleged herein, or some part thereof, arose out of transactions that occurred in Cook County, Illinois.

2

## GENERAL ALLEGATIONS

7.     Several years ago, Kroupa was introduced to Garbus, a New York attorney who claimed to have contacts and experience in the film industry. Kroupa, too, was interested in the film industry, but had no prior experience with film investing, development or production.

**Oral Agreement**

8.     In December 2005, Kroupa and Garbus agreed to form a business partnership for the purpose of developing a motion picture tentatively titled "Save Me." Kroupa and Garbus met at a restaurant in New York City in early December, 2005. Later that month, they spoke on one or more occasions by telephone. In the meeting and telephone conversation(s), Kroupa and Garbus discussed and agreed to form and operate a partnership to develop "Save Me," and to various terms of their agreement.

9.     Among other things, Garbus and Kroupa agreed, and had a meeting of the minds, that Kroupa would contribute certain cash to "Save Me," while Garbus would oversee the project to ensure that the film was produced and distributed and that Kroupa's cash investment was properly preserved and protected. Kroupa agreed to invest approximately $1.3 million in "Save Me," subject to various terms and conditions.

10.     In the same meeting and conversation(s), Garbus expressly agreed that Kroupa would be entitled to recoup an amount equal to his cash investment, plus a 20% return thereon, before any profits, cash flow, or other distributions were provided to Garbus (hereafter, the "120% Return Provision"). The parties agreed that after (but only after) Kroupa received 120% of his investment, profits would be distributed on a 60/40 basis, i.e., Kroupa would receive 60% of every such distribution and Garbus 40%.

11.    In a telephone conversation in or around December 2005, Garbus and Kroupa further agreed to form an LLC, i.e., GKE, and that each of them would be managers of GKE.

12.    The foregoing oral agreement, including the 120% Return Provision, was, and is, a valid and enforceable agreement.

**Written GKE Agreement**

13.    The parties undertook to memorialize the foregoing agreement in writing. In or around December, 2005, attorney Garbus drafted what ultimately became the Garbus Kroupa Entertainment Limited Liability Company Agreement (the "Written GKE Agreement"), an executed copy of which is attached as Exhibit A to this Complaint.

14.    Kroupa asked his long-time Chicago real estate attorney, Elka Geller Nelson ("Nelson"), to review the draft Written GKE Agreement that Garbus had prepared.

15.    In telephone conversations held in or around December, 2005, Garbus advised and represented to Nelson that he and Kroupa had agreed to the 120% Return Provision as a part of their deal and that such Provision was contained in a side letter agreement between Kroupa and him. Consistent therewith, Section 10.3 of the Written GKE Agreement expressly provides that the parties' entire agreement includes a letter agreement between Kroupa and Garbus.

16.    However, contrary to what Garbus told Nelson, and unbeknownst to Nelson, the letter agreement referred to in the Written GKE Agreement does not contain the 120% Return Provision.

17.    Thus, Garbus either intentionally or mistakenly omitted the 120% Return Provision from the Written GKE Agreement, and the Written GKE Agreement did not fully and accurately reflect the earlier oral agreement between Kroupa and Garbus described in paragraphs 8 through 12 above.

4

18.    The Written GKE Agreement includes various terms and conditions governing Garbus' conduct as a Manager of GKE, including, but not limited to, those outlined immediately below.

19.    Section 1.1(x) identifies Garbus and Kroupa as the Managers of GKE.

20.    Section 3.1(a) provides that Kroupa was contributing to GKE certain specified cash and Garbus was contributing "Intellectual Property and Proprietary Information Arising out of Motion Picture Products and their Development."

21.    Section 10.14(c) requires Garbus "to continue to provide executive producer services with respect to any motion picture project for a minimum of two years following the date of the financing of such motion picture."

22.    Sections 3.1(a) and 3.2(a) provide, however, that Garbus' capital account will not be credited "in respect of services rendered to the Company or contribution of intellectual property and proprietary information arising out of motion picture products and their development . . . other than any allocation of Profit under this Agreement[.]"

23.    Article V requires GKE to maintain "complete and accurate books and records" at its principal offices in New York, to allow any member to inspect and copy same, and to provide each member with, among other things, a balance sheet and income statement each year.

24.    Under Section 6.1, the approval of both Managers was required for GKE to, among other things, enter into contracts and acquire interests in movies.

25.    Section 6.2(b) addresses amendments to the Written GKE Agreement, but does not require that amendments be in writing or signed.

26.    Section 6.5(a) provides that a Manager "shall act in good faith and with that degree of care that an ordinarily prudent Person in a like position would use under similar

5

circumstances and shall perform diligently and faithfully [his] duties for the benefit of the Company[.]"

## GKE Projects

27.    At various points after the Written GKE Agreement was signed, Garbus reiterated the 120% Return Provision to Kroupa (and others) and that it was binding between Kroupa and him.

28.    Kroupa relied on the foregoing statements, without limitation, by investing additional cash in GKE entertainment projects after making his initial approximately $1.3 million investment in "Save Me."

29.    In that regard, among other things, Kroupa contributed an additional approximately $9 million to GKE to fund all or part of four other entertainment projects, namely, films tentatively titled "Dream Boy," "Brooklyn To Manhattan" and "Latin Lyrics," and a recorded stage production titled "Bobby Jones Comedy All Stars: Volume 1."

30.    None of the four films in which Kroupa and GKE invested -- "Save Me," "Dream Boy," "Brooklyn To Manhattan" and "Latin Lyrics" -- has been distributed theatrically.

31.    "Bobby Jones Comedy All Stars: Volume I" was released to video, but Garbus has failed to provide to Kroupa any funds generated for GKE by that production, despite Kroupa's demands for same.

## COUNT I

### Reformation

#### (By Kroupa Individually)

32.    Paragraphs 1 through 31 above are incorporated by reference as if fully set forth herein.

33.    It was unknown to Kroupa when he signed the Written GKE Agreement that it did not expressly recite the parties' earlier oral agreement to the 120% Return Provision. In fact, Kroupa first learned that the Written GKE Agreement did not expressly recite the 120% Return Provision in or around the summer of 2007.

34.    The 120% Return Provision was omitted from the Written GKE Agreement as a result of -- in the alternative -- either: (a) a mutual mistake by both parties, or (b) fraud by Garbus and a unilateral mistake by Kroupa.

WHEREFORE, Kroupa prays for the entry of judgment in his favor and against Garbus, as follows:

A.    Reforming the Written GKE Agreement by inserting the 120% Return Provision;

B.    Awarding Kroupa his costs incurred in this action; and

C.    Awarding Kroupa such other and further relief as is appropriate.

## ALTERNATIVE COUNT II

### Declaratory Relief

#### (By Kroupa Individually)

35.    Paragraphs 1 through 31 above are incorporated by reference as though fully set forth herein.

36.    Kroupa has an interest in receiving a return of his investment, plus 20%, before any profits, cash flow, or other distributions are provided to Garbus (i.e., the 120% Return Provision).

37.    Garbus, among other things, has failed to abide by the 120% Return Provision and, recently, has also failed to confirm that the 120% Return Provision is part of the parties' agreement. Accordingly, Garbus has an opposing interest regarding the 120% Return Provision

7

and the parties have an actual controversy regarding the terms under which Kroupa is entitled to a return of, and a return on, his investment.

38.    The relief requested herein will terminate all or some part of that controversy.

39.    In the event that the Written GKE Agreement is not reformed to include the 120% Return Provision as requested in Count I above, then, in the alternative thereto, Kroupa alleges that by virtue of, among other things, the matters alleged in Paragraphs 27 through 29 above: (a) the Written GKE Agreement was amended to include the 120% Return Provision; and/or (b) Garbus is estopped to deny that the 120% Return Provision is binding and enforceable between Kroupa and him.

40.    In all events, in the alternative to the allegations of Count I and the preceding paragraph, Kroupa is entitled to receive all distributions of any kind from GKE up to the amount of his total capital contributions to GKE, before any GKE funds are distributed to Garbus.

WHEREFORE, if, but only if, this Court declines to reform the Written GKE Agreement to include the 120% Return Provision, then Kroupa, in the alternative to such relief, respectfully requests entry of judgment in his favor and against Garbus:

A.    Declaring that Kroupa is entitled to the return of an amount equal to all of his cash investments in GKE, totaling in excess of $10 million, plus a 20% return thereon, before Garbus receives any further cash or distributions of any kind from GKE or its projects;

B.    In the alternative to the declaration requested in the immediately preceding prayer, declaring that Kroupa is entitled to receive all distributions of any kind from GKE up to the amount of his total capital contributions to GKE, before any GKE funds are distributed to Garbus;

C.    Awarding Kroupa his costs incurred in this action; and

D.    Awarding Kroupa such other and further relief as is appropriate.

## COUNT III

### Breach Of Contract

### (By Kroupa Individually)

41.    Paragraphs 1 through 31 above are incorporated by reference as if fully set forth herein.

42.    Garbus breached the Written GKE Agreement by, among other things:

a.    Purporting to commit GKE to invest substantially more money in one or more entertainment projects than was disclosed to, or agreed to by, Kroupa;

b.    Transferring to himself a purported financing fee for the "Latin Lyrics" project in the amount of $260,000, without Kroupa's knowledge or consent. Under Section 10.14(b) of the Written GKE Agreement and otherwise, Garbus was entitled to receive, if anything, no more than about a $34,000 financing fee with respect to "Latin Lyrics";

c.    Failing to disburse to Kroupa in accordance with the Written GKE Agreement and/or the 120% Return Provision funds that GKE received from one or more entertainment projects in which it invested, including, without limitation, the "Bobby Jones Comedy All Stars: Volume I";

d.    Transferring to himself interest earned on funds that Kroupa, through GKE, placed in escrow to finance GKE projects, while providing none of such interest to Kroupa;

e.    Failing to provide to Kroupa the economic benefit of a tax credit received from the State of New Mexico for filming "Save Me";

9

f.    Failing to provide to Kroupa financial statements and other books and records of GKE despite numerous written and oral demands for same; and

g.    Failing to share information with Kroupa, and to answer his requests for information, concerning GKE and its projects.

43.    Kroupa has performed, or is excused from performing, all obligations required of him under the Written GKE Agreement.

44.    As a direct and proximate result of Garbus' breaches of the Written GKE Agreement, Kroupa has been damaged in an amount exceeding $2 million.

WHEREFORE, Kroupa prays for the entry of judgment in his favor and against Garbus, awarding Kroupa:

A.    Compensatory damages in an amount to be determined after trial;

B.    Prejudgment interest at the statutory rate of five percent per annum;

C.    His costs incurred in this action; and

D.    Such other and further relief as is appropriate.

## COUNT IV

### Breach Of Fiduciary Duty

### (By Kroupa Individually)

45.    Paragraphs 1 through 31 above are incorporated by reference as though fully set forth herein.

46.    By reason of the foregoing, Garbus owed Kroupa fiduciary duties of care, loyalty and good faith.

47.    Garbus breached the foregoing duties by, among other things:

a.    Purporting to commit GKE to invest substantially more money in one or more entertainment projects than was disclosed to, or agreed to by, Kroupa;

b.    Transferring to himself a purported financing fee for the "Latin Lyrics" project in the amount of $260,000, without Kroupa's knowledge or consent.  Under Section 10.14(b) of the Written GKE Agreement and otherwise, Garbus was entitled to receive, if anything, no more than about a $34,000 financing fee with respect to "Latin Lyrics";

c.    Failing to disburse to Kroupa in accordance with the Written GKE Agreement and/or the 120% Return Provision funds that GKE received from one or more entertainment projects in which it invested, including, without limitation, the "Bobby Jones Comedy All Stars: Volume I";

d.    Transferring to himself interest earned on funds that Kroupa, through GKE, placed in escrow to finance GKE projects, while providing none of such interest to Kroupa;

e.    Failing to provide to Kroupa the economic benefit of a tax credit received from the State of New Mexico for filming "Save Me";

f.    Demanding a release from Kroupa of all claims against Garbus in exchange for releasing certain funds escrowed in connection with the "Latin Lyrics" project;

g.    Failing to provide to Kroupa financial statements and other books and records of GKE despite numerous written and oral demands for same;

h.    Failing to share information with Kroupa, and to answer his requests for information, concerning GKE and its projects;

i.    Failing to obtain outside financing for one or more entertainment projects in which Kroupa, through GKE, invested, including, without limitation, "Brooklyn To

11

Manhattan," contrary to, among other things, Garbus' representations and inducements to Kroupa to invest in such projects;

      j.     Failing to negotiate project agreements that, consistent with the Written GKE Agreement, industry standards and Garbus' duty to properly preserve and protect Kroupa's investments, gave GKE management and/or ownership control over the funding and production of each entertainment project in which GKE invested;

      k.     Failing to insist, consistent with the Written GKE Agreement, industry standards and Garbus' duty to properly preserve and protect Kroupa's investments, that an auditor answerable to GKE, or its functional equivalent, be retained on each entertainment project in which Kroupa, through GKE, invested;

      l.     Failing to insist, consistent with the Written GKE Agreement, industry standards and Garbus' duty to properly preserve and protect Kroupa's investments, that a completion bond be posted in favor of GKE on each entertainment project in which Kroupa, through GKE, invested;

      m.     Allowing the "Brooklyn To Manhattan" project to go substantially over-budget because of, among other things, inadequate spending controls and mismanagement, including with respect to funds that Kroupa, through GKE, invested in such projects;

      n.     Squandering and mishandling one or more distribution opportunities on entertainment projects in which Kroupa, through GKE, invested, including, without limitation, a distribution deal for "Save Me" offered by Roadside Attractions LLC; and

      o.     Otherwise grossly mismanaging entertainment projects in which Kroupa, through GKE, invested.

48.     Garbus' breaches of fiduciary duty were intentional, willful, wanton and/or malicious in that, among other things, they were intended solely to benefit Garbus at the expense, and to the detriment, of Kroupa, his co-manager and co-member in GKE.

49.     As a direct and proximate result of Garbus' breaches of fiduciary duty, Kroupa has been damaged in an amount exceeding $2 million. Had Garbus performed his fiduciary duties as required, Kroupa would not have suffered such losses.

WHEREFORE, Kroupa prays for the entry of judgment in his favor and against Garbus, awarding Kroupa:

A.     Compensatory damages in an amount to be determined after trial;

B.     Punitive damages in an amount to be determined after trial, but no less than $5 million;

C.     His costs incurred in this action; and

D.     Such other and further relief as is appropriate.

## COUNT V

### Breach Of Fiduciary Duty

### (By Kroupa Derivatively On Behalf Of GKE)

50.     Paragraphs 1 through 31 above are incorporated by reference as though fully set forth herein.

51.     By reason of the foregoing, Garbus owed GKE fiduciary duties of care, loyalty and good faith.

52.     Garbus breached the foregoing duties by, among other things:

a.     Purporting to commit GKE to invest excessive, highly imprudent amounts of money in one or more entertainment projects without Kroupa's knowledge or consent;

13

b.     Failing to obtain outside financing for one or more entertainment projects in which GKE invested, including, without limitation, "Brooklyn To Manhattan";

c.     Failing to negotiate project agreements that, consistent with the Written GKE Agreement and industry standards, gave GKE management and/or ownership control over the funding and production of each entertainment project in which GKE invested;

d.     Failing to insist, consistent with the Written GKE Agreement and industry standards, that an auditor answerable to GKE, or its functional equivalent, be retained on each entertainment project in which GKE invested;

e.     Failing to insist, consistent with the Written GKE Agreement and industry standards, that a completion bond be posted in favor of GKE on each entertainment project in which it invested;

f.     Allowing the "Brooklyn To Manhattan" project to go substantially over-budget because of, among other things, inadequate spending controls and mismanagement;

g.     Squandering and mishandling one or more distribution opportunities on entertainment projects in which GKE invested, including, without limitation, a distribution deal for "Save Me" offered by Roadside Attractions LLC; and

h.     Otherwise grossly mismanaging GKE's entertainment projects.

53.     Garbus' breaches of fiduciary duty were intentional, willful, wanton and/or malicious in that, among other things, they were intended solely to benefit Garbus at the expense, and to the detriment, of GKE.

54.     As a direct and proximate result of Garbus' breaches of fiduciary duty, GKE has been damaged in an amount exceeding $2 million. Had Garbus performed his fiduciary duties as required, GKE would not have suffered such losses.

14

55.   A demand on Garbus to cause GKE to seek redress against him for these wrongs would be futile.

WHEREFORE, Kroupa, derivatively on behalf of GKE, prays for the entry of judgment in favor of Kroupa and/or GKE and against Garbus, as follows:

A.   Awarding compensatory damages in an amount to be determined after trial;

B.   Awarding punitive damages in an amount to be determined after trial, but no less than $5 million;

C.   Ordering that Garbus not share in any amounts recovered by GKE hereunder;

D.   Awarding Kroupa his attorneys' fees and litigation expenses incurred in bringing this claim on behalf of GKE, in an amount to be determined after trial or hearing;

E.   Awarding Kroupa his costs incurred in this action; and

F.   Awarding GKE, and/or Kroupa derivatively, such other and further relief as is appropriate.

## COUNT VI

### Removal As Manager

### (By Kroupa Individually and Derivatively)

56.   Paragraphs 1 through 31, 47, 48, 52 and 53 above are incorporated by reference as though fully set forth herein.

57.   By reason of the foregoing, Garbus owed GKE and Kroupa fiduciary duties of care, loyalty and good faith.

15

58.   By reason of the foregoing, Garbus breached his fiduciary duties to GKE and Kroupa.

59.   By reason of his multiple, flagrant breaches of fiduciary duty, Garbus should be judicially removed as a manager of GKE.

60.   A demand on Garbus to cause GKE to seek to remove him as a manager would be futile.

WHEREFORE, Kroupa prays for the entry of judgment in his favor and against Garbus, as follows:

A.   Ordering that Garbus be and is removed as a manager of GKE;

B.   Awarding Kroupa his costs incurred in bringing this action individually and/or derivatively on behalf of GKE; and

C.   Awarding Kroupa, individually and/or derivatively on behalf of GKE, such other and further relief as is appropriate.

## COUNT VII

### Inspection Of Documents/Accounting

### (By Kroupa Individually)

61.   Paragraphs 1 through 31, 42, 43, 46 and 47 above are incorporated by reference as though fully set forth herein.

62.   By reason of Article V of the Written GKE Agreement and applicable law, Kroupa is entitled, without limitation, to receive annual financial statements for GKE and to inspect GKE's books and records.

16

63.     Despite the foregoing and Kroupa's numerous requests for such financial statements, books and records, Garbus has failed to provide Kroupa with various of GKE's books, records and financial statements.

64.     By reason of the foregoing, Kroupa is also entitled to an accounting of all of GKE's accounts and transactions.

WHEREFORE, Kroupa prays for the entry of judgment in his favor and against Garbus, as follows:

    A.     Ordering that Kroupa be permitted to inspect and copy all books and records of GKE;

    B.     Ordering Garbus to provide Kroupa with GKE's annual financial statements from its inception;

    C.     Ordering Garbus to provide Kroupa with a full and accurate accounting of all GKE accounts and transactions;

    D.     Awarding Kroupa his costs incurred in this action; and

    E.     Awarding Kroupa such other and further relief as is appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims triable to a jury.

Respectfully submitted,

ROBERT KROUPA, individually and derivatively
on behalf of GARBUS KROUPA
ENTERTAINMENT, LLC

By: _____
     One of His Attorneys

17

# Exhibit 2

### CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

Robert Kroupa, ind. and derivatively )
On behalf of Garbus Kroupa Ent.,LLC, )
                                       )
v.                                     ) 2008 CH 13020
                                       )
James D. Garbus.,                      )
                                       )
                                       )

### AFFIDAVIT

I, _____Daniel Newcomb_____, hereby sworn on oath state that I am over the age of 18 years and not a party in the above captioned matter and that on _April 9_ 2008 at _3:05_ P M. I served this Summons and Complaint upon: **Garbus Kroupa Entertainment , LLC** at 2711 Centerville Rd., Ste. 400, Wilmington, DE 19808 by serving:

Name: _____Mary Drummond_____

Title: _Managing Agent_

Description: Sex:_ F _, Race:_ Blk _, Age:_ 40's _

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit of service are true and correct

Further the Affiant Sayeth Naught.

_____
Process Server
Daniel Newcomb

Sworn before me a Notary Public of the State of Delaware on April 10, 2008

_____
Notary Public

**KIMBERLY J. RYAN**
**NOTARY PUBLIC-DELAWARE**
My Commission Expires June 15, 2005

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS    (Rev.1/2/01) CCG0001 |

## IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ROBERT KROUPA, individually and derivatively
on behalf of GARBUS KROUPA
ENTERTAINMENT, LLC,

                Plaintiff,

       v.

JAMES D. GARBUS,

                Defendant.

Case No. 08CH13020

**PLEASE SERVE:**

**Garbus Kroupa Entertainment LLC**
**c/o Corporation Service Company**
**2711 Centerville Rd., Ste. 400**
**Wilmington, DE 19808**

### SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room 801, Chicago, Illinois 60602

☐ District 2-Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077

☐ District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008

☐ District 4 - Maywood
  1500 Maybrook Ave.
  Maywood, IL 60153

☐ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455

☐ District 6-Markham
  16501 S. Kedzie Pkwy.
  Markham, IL 60426

You must file within 30 days after service of this summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

I served this subpoena by hand delivery on _____ at the above address on April___, 2008.

.........................................................
  Signed and sworn to before me _____, 2008.

.........................................................
                                        Notary Public

Atty. No.: 91731
Name: NOVACK AND MACEY LLP (SN/SJS/MSB)
Atty. for: Plaintiffs
Address: 100 North Riverside Plaza
City/State/Zip: Chicago, IL 60606
Telephone: (312) 419-6900

WITNESS, APR 0 8 2008 _____

                             Clerk of Court

**DOROTHY BROWN. CLERK OF THE CIRCUIT COURT OF COOK COUNTY. ILLINOIS**