UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT KROUPA, individually and derivatively on behalf of GARBUS KROUPA ENTERTAINMENT, LLC, )<br>)<br>)<br>) | |
| Plaintiff, ) | Case No. 08 CV 02691 |
| ) | |
| v. ) | Judge Castillo |
| ) | |
| JAMES D. GARBUS, ) | Magistrate Judge Valdez |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF MOTION TO REMAND**

Robert Kroupa ("Kroupa"), individually and derivatively on behalf of Garbus Kroupa Entertainment, LLC ("GKE"), by his attorneys, submits this reply memorandum in support of his motion to remand this action to the Circuit Court of Cook County, Illinois.

**SUMMARY OF ARGUMENT**

In opposing remand, Defendant James D. Garbus ("Garbus") concedes that he is a citizen of New York, that Kroupa is a citizen of Illinois and that GKE is a citizen of both New York and Illinois. (See Opposition to Motion to Remand (the "Opposition") at 1, 2.) Without more, these uncontested facts defeat diversity jurisdiction under several related legal principles.

Those settled principles include the following. Of overarching importance is that in determining diversity jurisdiction the citizenship of an indispensable party must be taken into account. See, e.g., Bagdon v. Bridgestone/Firestone, Inc., 916 F.2d 379, 382 (7th Cir. 1990). As shown below, GKE is an indispensable party to two counts of the Complaint -- Counts V and VI. Thus, GKE's presence as a party destroys diversity jurisdiction.

GKE is an indispensable party to Count VI. Count VI seeks to remove Garbus as a manager of GKE, a Delaware limited liability company ("LLC"). Under the Delaware Limited Liability

Company Act, in a claim to remove a manager of a LLC, "the [LLC] <u>shall</u> be named as a party." 6 DEL. CODE ANN. §18-110(a) (2008) (emphasis added). Accordingly, GKE is an indispensable party on Count VI. For this reason alone, diversity is lacking.

Moreover, GKE is an indispensable party to Count V. Count V is brought derivatively on GKE's behalf against Garbus for breaching the fiduciary duties he owed to GKE as one of its two managers. Among other things, Count V sues Garbus for mismanaging GKE in breach of his fiduciary duties to GKE. A claim under Delaware law against a managing agent for mismanaging a corporation (or other entity) "belong[s] to the corporation or the corporation's shareholders derivatively." <u>Weinberger v. Lorenzo</u>, Civ. A. No. 10692, 1990 WL 156529, at *3 (Del. Ch. Oct. 12, 1990). Moreover, on a derivative claim, the entity -- here, GKE -- is an indispensable party. <u>See</u>, <u>e.g.</u>, <u>Ross v. Bernhard</u>, 396 U.S. 531, 538 (1970) (corporation is indispensable party to derivative claim). Because Count V is brought derivatively on GKE's behalf, GKE is an indispensable party to that claim. Accordingly, the claim in Count V belongs to GKE or its member, Kroupa, derivatively, and diversity is lacking.

The Opposition continues to ignore these dispositive facts and principles -- just as Garbus did when improperly removing this case to federal court in the first place. Instead, Garbus seeks to thrust subject matter jurisdiction upon this Court by arguing that GKE is not a party because Kroupa's derivative claims are "an artifice" and not genuinely derivative, and GKE is not a real party in interest. As shown below, both arguments fail badly.

## ARGUMENT

Put simply, if GKE is a party to this action, then this Court lacks subject matter jurisdiction. Kroupa brings two claims -- Counts V and VI -- on which GKE is not only a party, but also an

indispensable party, as shown below. Accordingly, diversity jurisdiction is lacking and this action must be remanded.

**I.     COUNT VI**

GKE is plainly an indispensable party to the manager-removal claim in Count VI. GKE is a Delaware LLC. (Compl. ¶ 1.) Again, the Delaware LLC Act mandates that in any action to remove a LLC manager, "the [LLC] shall be named as a party." 6 DEL. CODE ANN. §18-110(a). Without more, GKE is a proper -- and indispensable -- party to Count VI.

On this basis alone, diversity jurisdiction is lacking. Thus, without even reaching Count V, this action must be remanded to Illinois State court.

**II.    COUNT V**

Count V also requires that GKE be a party and so it too destroys diversity jurisdiction. Count V is a derivative claim. It is brought on GKE's behalf against Garbus for breaching his fiduciary duties to GKE, including, without limitation, mismanaging GKE. (Compl. ¶¶ 51, 52.) The claim arises under Delaware law. See, e.g., Bagdon, 916 F.2d at 382 (in diversity case, law of state of incorporation, i.e., Delaware, governs derivative claim). Further, such a mismanagement claim "belong[s] to the corporation or the corporation's shareholders derivatively." Weinberger, 1990 WL 156529, at *3.

Because Count V is a derivative claim, the entity, GKE, is an indispensable party. See, e.g., Ross, 396 U.S. at 538 (in derivative action, "corporation is a necessary party" because "proceeds of the action belong to the corporation and it is bound by the result of the suit"); Bagdon, 916 F.2d at 382 (similar). For example, in Liddy v. Urbanek, 707 F.2d 1222, 1224-25 (11th Cir. 1983), the Eleventh Circuit applied these principles to hold that the district court had proceeded erroneously with a derivative action without the corporation present as a party. Because naming the corporation

as a party would defeat diversity jurisdiction, the appeals court remanded the case to the district court with instructions to dismiss the action.  Id.

To try to avoid these settled principles, Garbus contends that: (a) Count V is just a "masked individual claim," or an "artifice," and does not actually seek derivative relief; and (b) Kroupa, not GKE, is the "real party in interest" on Count V.  (Opposition at 1, 4.)  As shown below, Garbus is wrong.

### A.   Count V Is Not A "Masked Individual Claim"

Count V is not a masked individual claim or an artifice.  It seeks relief on GKE's behalf to vindicate GKE's rights and losses.

Under Delaware law, whether a cause of action is direct or derivative turns on the answers to two inter-related questions:  who suffered the alleged harm; and who would receive the benefit of any recovery or other remedy.  E.g., Feldman v. Cutaia, 951 A.2d 727, 732 (Del. 2008).  As shown below, Count V is a derivative claim.  Among other things:  (i) GKE is the party to whom the duty was owed and which suffered the harm; (ii) GKE will receive a benefit from any recovery; (iii) contrary to Garbus' argument, Kroupa's derivative and direct fiduciary duty claims are distinct; and (iv) that GKE has just two members does not preclude a derivative claim.

#### 1.   GKE Was Owed The Duty And Suffered The Harm

A derivative action is "a suit to enforce a corporate cause of action against officers, directors, and third parties."  Ross, 396 U.S. at 534.  "An action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action." Bagdon, 916 F.2d at 381 (emphasis added).  Conversely, for a claim to be direct rather than derivative, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder

and that he or she can prevail without showing an injury to the corporation." Feldman, 951 A. 2d at 732 n.24 (citation omitted; emphasis added).

In Bagdon, the individual plaintiff alleged that defendant Firestone's wrongful competition caused Ford City West, a store-corporation of which plaintiff and Firestone were co-owners, to lose profits. Applying Delaware law, the Seventh Circuit held this claim was derivative because it was Ford City West that (a) was owed the duty not to compete wrongfully and (b) suffered the direct loss. Id. at 384. The court explained:

> Bagdon believes that Firestone wrongly competed with Ford City West. Firestone owed that duty to [Ford City West], not to . . . Bagdon . . . . Violation of the duty injured [Ford City West], and Bagdon's loss was derivative (he could not receive dividends out of profits the corporation did not make). Bagdon alleged some direct injuries, which he was free to litigate, but he could not recover on account of [Ford City West's] diminished profits without making the corporation a party.

Id. (emphasis added). Because Ford City West's presence as a party would destroy diversity, the court vacated the judgment in plaintiff's favor and remanded the case to the district court with directions to dismiss the case for lack of subject matter jurisdiction. Id.

The same holds true here. Although Kroupa properly alleges various individual direct claims, he additionally alleges Count V, which is based on duties Garbus owed to GKE and harms GKE suffered as a result of Garbus' breaches of those duties. In particular, Count V alleges Garbus breached his fiduciary duties to GKE in a number of ways, including:

- Committing GKE to invest excessive, highly imprudent amounts of money;

- Failing to obtain outside financing for projects in which GKE invested;

- Failing to negotiate agreements that gave GKE management or ownership control;

5

- Failing to insist that an auditor answerable to GKE be retained on each project in which GKE invested;

- Failing to insist that a completion bond be posted on each project in which GKE invested;

- Allowing GKE's largest project to go substantially over-budget;

- Mishandling distribution opportunities on projects in which GKE invested; and

- Mismanaging GKE's entertainment projects.

(Compl. ¶52.)  Count V further alleges that, as a result of these breaches, GKE, the entity, has been damaged.  (Id. ¶54.)

To remedy these breaches, and obtain relief for GKE, GKE must be a party to Count V.  In turn, GKE's presence destroys diversity jurisdiction.  For this independent reason, this action must be remanded.

**2.     GKE Will Benefit From The Derivative Claim**

GKE will receive a benefit from Count V.  As an initial matter, the prayer for relief in Count V requests that damages be awarded directly to GKE.  (Compl. at 15.)  That Kroupa may benefit indirectly -- via a distribution from GKE or an increase in the value of his GKE membership interest -- does not alter that Count V is derivative.

Indeed, in every derivative claim, the shareholder stands to benefit -- derivatively.  As shown by the rationale of a case Garbus cited, CCC Info. Serv. Inc. v. Am. Salvage Pool Ass'n, 230 F.3d 342 (7th Cir. 2000), the fact that a benefit to GKE may trickle down to Garbus is irrelevant:  "where the members are incidentally benefitted by the association's enforcement of its own contract rights, the citizenship of the association is the only relevant factor in the diversity analysis."  Id. at 347 (emphasis added).  As in CCC, Count V seeks to enforce GKE's own rights.  Even if Kroupa

benefits incidentally from enforcing those rights, GKE's citizenship is the "relevant factor in the diversity analysis." Id.

Garbus argues that the derivative nature of Count V should be ignored because one of its prayers for relief is that Garbus not share in any damages awarded to GKE. According to Garbus, "[i]f Garbus cannot share in any amounts received by the LLC, then any amount awarded to the LLC goes directly to Kroupa -- and Kroupa only." (Opposition at 4.) Of course, prayers for relief are not controlling or outcome determinative. Kansas City, St. L. & C.R. Co. v. Alton R. Co., 124 F.2d 780, 783 (7th Cir. 1941).

In any case, Garbus is mistaken that prayer C in Count V either (a) means that all funds GKE receives on that claim go to Kroupa or (b) renders Count V an individual claim. Any and all damages under Count V will be awarded and payable to GKE. Moreover, it is improbable, if not impossible, that all such funds will go to "Kroupa only." According to the Complaint, GKE is an operating entity that is in a precarious position financially. (E.g., Compl. ¶¶ 9, 29, 30, 31 & 54.) Among other things, GKE has invested over $10 million in entertainment projects, but none of its four films has been distributed theatrically. (See id. ¶¶9, 29 & 30.) No distributions have been made to GKE's members. (See id. ¶¶30-31, 42.c.) Moreover, GKE's films lacked standard financial controls and one or more of them is over budget. (Id. ¶¶52.b-f.) To the extent that GKE uses monies it receives from Garbus under a damage award to pay operating or other costs, expenses, losses or liabilities, those funds (a) would not go to "Kroupa only" and (b) would benefit GKE, directly, and both of its member-managers, indirectly, in proportion to their membership interests. In short, GKE will benefit from an award under Count V and Garbus cannot show otherwise.

7

In all events, if GKE is able to someday make a distribution to its members, such a benefit to Kroupa is incidental and irrelevant for diversity purposes. See CCC, 230 F.3d at 347. The dispositive issue is whether GKE will benefit. If Kroupa succeeds on Count V, then GKE will benefit.

### 3.     The Individual And Derivative Claims For Breach Of Fiduciary Duty Are Distinct

Garbus argues that Count V is just a "masked individual claim[.]" (Opposition at 4.) Not so. Count V is distinct from Kroupa's claim in Count IV, which was brought individually for breach of fiduciary duty.

Under Delaware law, a managing agent's fiduciary duty to manage the affairs of an entity is owed to the entity itself; thus, a breach of that duty violates a duty owed to the entity. See, e.g., Dieterich v. Harrer, 857 A.2d 1017, 1027-28 (Del. Ch. 2004) (holding breach of "directors' normal duty to manage the affairs of the corporation" is derivative claim). Here, Count V alleges breaches of Garbus' fiduciary duties to manage GKE, such as: (a) committing GKE to excessive investments; (b) failing to obtain outside financing for GKE projects; (c) failing to obtain management or ownership control for GKE over its projects; (d) failing to insist that an auditor answerable to GKE be retained; (e) failing to insist that a completion bond be posted on GKE projects; (f) allowing a GKE project to go over-budget; and (g) mishandling distribution opportunities on GKE projects. (Compl. ¶52.) Because these breaches violated fiduciary duties that Garbus owed to GKE, Count V seeks relief derivatively on GKE's behalf to vindicate GKE's rights.

By contrast, Count IV alleges at least eight breaches of duties that Garbus owed directly to Kroupa individually, including: (A) committing GKE to invest in projects not disclosed to or approved by Kroupa; (B) transferring financing fees to Garbus without Kroupa's knowledge or

consent; (C) failing to disburse to Kroupa funds that GKE had received; (D) failing to provide Kroupa with interest earned on GKE funds in escrow; (E) failing to provide Kroupa with the economic benefit of a tax credit GKE received; (F) demanding a release from Kroupa of all claims against Garbus in exchange for releasing certain of GKE's funds in escrow; (G) failing to provide Kroupa with GKE financial records he requested; and (H) failing to share information with Kroupa. (Compl. ¶47.)  Count IV -- by contrast to Count V -- is a direct claim brought by Kroupa individually to enforce fiduciary duties Garbus owed to Kroupa personally.

Therefore, Counts IV and V are distinct and Count V is a derivative claim.

### 4. The Fact That GKE Only Has Two Members Does Not Preclude A Derivative Claim

It is not unusual -- and certainly not a basis on which federal jurisdiction may be founded -- for a derivative claim to be filed on behalf of an entity owned by just two shareholders or members. See, e.g., Nejmanowski v. Nejmanowski, 841 F. Supp. 864, 865 (C.D. Ill. 1994) (dismissing derivative action brought by 49% owner against 51% owner for lack of diversity).  For example, in Trademark Retail, Inc. v. Apple Glen Investors, LP, 196 F.R.D. 535, 539 (N.D. Ind. 2000), one LLC member sued the other and alleged harm to the LLC.  The court declared the suit akin to a derivative claim between two shareholders of a closely-held corporation and held that, although both LLC members were already before the court, the LLC was an indispensable party, whose presence as a party would destroy diversity jurisdiction.  Id. at 539-40.

The same principles apply here to require GKE's presence as a party to Count V and to destroy diversity jurisdiction.

B.    **GKE Is A Real Party In Interest As To Count V**

Garbus argues that diversity jurisdiction exists because GKE is a "nominal" party, not the "real party in interest." (Opposition at 5.) Garbus has it backwards. In a derivative suit, the shareholder -- not the corporation -- is the nominal party. Van Gelder v. Taylor, 621 F. Supp. 613, 620 (N.D. Ill. 1985). "[T]he plaintiff stockholder in a stockholder's derivative suit is 'at best the nominal plaintiff'." Id. (quoting Liddy, 707 F.2d at 1224). "The corporation is the real party in interest." Id. Because Count V presents a derivative claim, GKE is not a nominal party but the real party in interest.

Garbus' Opposition fails to cite a single case holding that the entity in a derivative suit is not the real party in interest or is dispensable and unnecessary to the suit. The cases Garbus cites are off-point and offer no support for finding federal jurisdiction here.

The Opposition (at 3) cites N. Trust Co. v. Bunge Corp., 899 F.2d 591 (7th Cir. 1990). In Bunge, pursuant to a stock purchase agreement, The Northern Trust Company ("Northern") was appointed to receive "notices, requests, instructions, or other documents" on behalf of the sellers. Id. at 592. Northern filed suit in its capacity as "agent and attorney" for the sellers. Id. at 593. The suit was not brought derivatively. Id. at 595. The court concluded that for diversity purposes it was the citizenship of the individual sellers, not that of Northern, that mattered. Id. at 594. Here, however, GKE is not bringing suit as an agent of another party. Rather, the situation is reversed -- Kroupa, an individual, is bringing a derivative suit on behalf of the injured entity, GKE. Accordingly, Bunge is distinguishable or, if anything, supports remand.

At page 2, the Opposition cites Navarro Sav. Ass'n v. Lee, 446 U.S. 458 (1980). The issue in that case was whether the trustees of a business trust or the trust's beneficial shareholders were the real parties in interest. Id. at 458. The case did not involve derivative claims and the Court's

holding was limited. See id. at 461- 62. Indeed, in Bunge, the Seventh Circuit rejected the plaintiff's reliance on Navarro because its precedent was narrow:

> [T]he argument that this case is controlled by Navarro is to no avail. Navarro merely holds that trustees who have legal title to trust property and who sue in their own names are the proper parties to consider in testing diversity.

Id. 899 F. 2d at 595. Here, too, Navarro does not control.

The Opposition (at 3) cites CCC, 230 F.3d at 347. In that case, the Seventh Circuit held that a not-for-profit corporation, rather than its members, was the real party in interest. Id. The plaintiff, in CCC, alleged a breach of its contract with the defendant association -- not the association's members. Id. Therefore, the defendant association was "at the 'front line'" and "feels the blow" of the alleged breach. Id. The Seventh Circuit reasoned that the fact "[t]hat the members feel the blow through a trickle down effect is irrelevant to jurisdictional analysis[.]" Id.

At page 3, the Opposition cites Nat'l Ass'n of Realtors v. Nat'l Real Estate Ass'n, Inc., 894 F.2d 937 (7th Cir. 1990) ("NAR"). In that decision, the Seventh Circuit analyzed whether the citizenship of a not-for-profit corporation, or that of its members, was relevant for determining diversity jurisdiction. Id. at 938. The court concluded that the relevant citizenship generally is that of the corporation, but because the complaint alleged that the members -- not the corporation -- suffered damages the members were the real parties in interest. Id. at 939-40.

By contrast, Count V alleges that GKE suffered damages -- not Kroupa individually. (See Compl. ¶54.) Thus, NAR is not on point. This distinction has been recognized and applied by the Seventh Circuit itself. In CCC, the Seventh Circuit explained that in NAR the "claim was based entirely on a wrong directly to the members, and not a wrong to the corporation that damaged the members through a trickle down effect[.]" 230 F. 3d at 347 (emphasis added). According to CCC,

it was for this reason that <u>NAR</u> held that the members were the real parties in interest. In any case, the <u>general</u> rule <u>NAR</u> cites -- that the relevant citizenship is that of the corporation -- supports remand because, as Garbus admits, here "the LLC [GKE] is a citizen of both New York and Illinois." (Opposition at 2.)

Thus, here, Count V alleges breaches of duties Garbus owed directly to GKE and damages to GKE generally, not to its members individually. As a result, GKE is at the front line and feels the blow of the wrongs and harms alleged in Count V.

## CONCLUSION

WHEREFORE, for the reasons set forth above and in the motion to remand, Kroupa, individually and derivatively on behalf of GKE, respectfully requests that: (A) this action be remanded to the Circuit Court of Cook County, Illinois, County Department, Chancery Division; (B) Kroupa be awarded the attorneys' fees and costs he incurred as a result of Garbus' improper removal; and (C) Kroupa be granted such other and further relief as is appropriate.

Respectfully submitted,

ROBERT KROUPA, individually and derivatively on behalf of GARBUS KROUPA ENTERTAINMENT, LLC

By: /s/ Stephen J. Siegel
      One Of His Attorneys

Stephen Novack
Stephen J. Siegel
Molly S. DiRago
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL  60606
(312) 419-6900
#237512

## **CERTIFICATE OF SERVICE**

Stephen J. Siegel, an attorney, affirms that he caused copies of the foregoing **Reply In Support Of Motion To Remand** to be served by electronically filing the document with the Clerk of Court using the ECF system this 3rd day of September, 2008.

/s/ Stephen J. Siegel
Stephen J. Siegel
